UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


TASHA HEWITT,

       Plaintiff,


v.                           Civil Action No. 2:22-cv-00388


STEVE STEPHENS, ROB SIMS,
THE WOOD COUNTY OFFICE OF THE SHERIFF,
THE WOOD COUNTY COMMISSION, and
PAT LEFEBURE,

       Defendants.


## MEMORANDUM OPINION AND ORDER


       Pending before the court are two motions to dismiss the complaint, one filed by defendant Steve Stephens on November 8, 2022 (ECF No. 13), and the other filed by the four remaining defendants, Rob Sims, Wood County Office of the Sheriff ("WCOS"), Wood County Commission ("WCC"), and Pat Lefebure (collectively, "the Wood County defendants"), on November 8, 2022 (ECF No. 15).

## I.  Background

For the purposes of these motions to dismiss, the court recites the relevant facts as alleged by the plaintiff in her complaint.  Compl., ECF No. 1.  The plaintiff, Tasha Hewitt,[1] began working for defendant WCOS as a deputy in 2018, where she was recruited, interviewed, and hired by defendant Stephens in his role at that time as Sheriff of Wood County, West Virginia. Id. at ¶¶ 13-14.  Subsequent thereto, plaintiff lodged allegations against the WCC, WCOS, and Stephens of harassment, discrimination, hostile work environment, retaliation, and other unspecified charges, which were settled by a confidential agreement on or about June 4, 2020 ("the June 4 Settlement"). Id. at ¶ 16.

The plaintiff brings this civil action for events occurring subsequent to the June 4 Settlement.  Generally, the plaintiff alleges that, following the settlement, defendants WCC and WCOS "failed to ever, or timely or effectively, implement

---

[1] In an affidavit filed along with her responses in opposition to the pending motions to dismiss, the plaintiff asserts that she has changed her last name to Allen, following her marriage.  See Allen Affidavit, ECF No. 23-1 at ¶¶ 1, 3.  She has made no motion upon the court to amend her name as a party to this action.

any training or other measures to curtail the conduct of Defendant Stephens." Id. at ¶ 17.

Plaintiff alleges that defendant Stephens' discriminatory behavior recommenced in September of 2020, at which point she was called into the office of defendants Stephens and Sims. Id. at ¶ 18. At the time, Sims was the Chief Deputy Sheriff of Wood County. See Mem. Supp. Wood Cnty. Defs.' Mot. Dismiss, ECF No. 16 at 11. Once in the office, she was allegedly told she was fat and ordered to buy new clothes for herself or have a certain Sergeant Allen buy them for her.[2] Compl. at ¶¶ 18, 20. At the time, the plaintiff was pregnant. Id. at ¶ 19. She "reported this incident to Defendant Lefebure as an officer of Defendant [WCC]." Id. at ¶ 21. She alleges that neither Lefebure nor WCC conducted any investigation into her allegations against Stephens or WCOS. Id. at ¶ 22.

The next alleged incident took place six months later in March 2021. Id. at ¶ 24. At that time, plaintiff had returned from maternity leave and sought a shift exchange to

_____

[2] The court notes that the plaintiff's complaint refers to both a "Sargeant [sic] Allen" and a "Lieutenant Allen," and her administrative charges filed with the Equal Employment Opportunity Commission reference a "Deputy Allen," who is also the plaintiff's husband. The extent to which the identity of these three individuals coincides is not apparent from the complaint.

accommodate her childcare needs.  Id.  This request would have
necessitated a male deputy with less seniority to also change
shifts.  Id. at ¶¶ 25-27.  Plaintiff does not allege that she
was ever denied this shift exchange but alleges that it was only
"reluctantly granted" after she voiced her belief that she was
receiving assertedly "disparate treatment based on her gender,"
apparently in comparison to the less-senior male deputy.  Id. at
¶ 28.  Plaintiff makes no allegation as to the involvement of
any specific defendant in this incident.  See id. at ¶¶ 24-28.

    Four months later, in July 2021, defendant Stephens
allegedly called into his office Sergeant Cross, a deputy.  Id.
at ¶ 29.  Stephens accused Cross of engaging in a sexual
relationship with the plaintiff and purported to have proof of
the same.  Id.  Stephens asserted that GPS trackers on WCOS
cruisers showed Cross as having parked his cruiser at the
plaintiff's home.  Id. at ¶ 30.  The plaintiff asserts this
fails to account for information "readily available" to Stephens
that Cross and plaintiff are neighbors and were "merely at their
separate but adjacent homes at the same time" and "not engaged
in any sort of sexual relationship."  Id. at ¶ 31.  Regardless,
the allegation of a sexual relationship led to rumor and gossip
at the WCOS office and harkened back to defendant Stephens'
alleged frequent and repeated references to plaintiff as a

"whore" at an unspecified past time.  Id. at ¶ 32.  On or about July 15, 2021, plaintiff's counsel notified counsel for WCC about this incident.  Id. at ¶ 33.

Plaintiff makes a number of convoluted allegations regarding events occurring "shortly []after" July 15, 2021.  Id. at ¶¶ 34-43.  She first alleges defendant Sims met with two other sergeants, one of whom demanded measures be taken to address the assertedly hostile work environment created by defendant Stephens.  Id. at ¶¶ 34-35.  In response to that meeting, plaintiff alleges that defendant Stephens advised all deputies by email that "spreading comments" would result in discipline.  Id. at ¶ 36.

Next, plaintiff alleges that, at some point, defendant Sims "interrogat[ed]" three other deputies about the plaintiff, and those three deputies then recounted their encounters with Sims to the plaintiff.  Id. at ¶ 37.  Subsequently, and "simultaneous[]" to other actions taking place "shortly []after" July 15, 2021, those three deputies were then called in to speak with Sergeant Cross, who allegedly sought to intimidate the deputies into retracting accounts they had previously given to plaintiff about their discussions with defendant Sims.  Id. at ¶¶ 37-38.

Plaintiff further alleges that, at an unspecified time, a deputy who is not a defendant to this suit, Sergeant Shriver, made a statement that was dismissive of the importance of childcare.  Id. at ¶ 39.  Plaintiff alleges that she reported these comments to a Lieutenant Allen, and that Shriver has allegedly retaliated against her for making such a report.  Id. at ¶¶ 40-41.  She also avers that defendant Stephens was made aware of Shriver's comment at an unspecified time and by an unspecified individual.  Id. at ¶ 42.  She avers that no known responsive action was taken by defendants Stephens, WCOS, or WCC.  Id. at ¶ 43.

On August 2, 2021, plaintiff alleges that she was called to defendant Lefebure's office for a meeting wherein she was told that she was being placed on the department's "Giglio list."[3]  Id. at ¶¶ 44, 46.  As she was arriving at Lefebure's office, plaintiff observed Stephens departing it.  Id. at ¶ 45.  Plaintiff alleges that she has received no written notice for her placement on the list, nor any written statement of reasons therefor, although Lefebure orally disclosed that it was related to information provided by her in a 2012 family court

_____

[3] A "Giglio list" is a term commonly used by prosecutors to indicate a list of law enforcement officers with credibility issues that must be disclosed to a defendant in a criminal trial under Giglio v. United States, 405 U.S. 150, 151-55 (1972).

proceeding.  Id. at ¶ 47.  Hewitt alleges that there is "no evidence of false testimony having been provided by" her at those proceedings, although it is not clear from the pleadings whether she disclaims having actually provided false testimony. Id. at ¶ 48.  Hewitt also alleges that the family court proceeding is sealed but that she had disclosed such information to defendant WCOS in 2018 while applying for a position with the department.  Id. at ¶¶ 48-49.  She further alleges that defendant Stephens had "full knowledge" of the 2012 family court matters beginning in 2018 and that it was provided to Lefebure in August 2021 by him, by someone at his direction, or by someone on his behalf in retaliation for plaintiff's sexual harassment complaints against Stephens.[4]  Id. at ¶¶ 50-51. Plaintiff alleges that Lefebure has not acknowledged his source for this information or when it came to his attention.  Id. at ¶ 52.

Defendant Stephens resigned from his position as Sheriff of Wood County effective December 1, 2021.  EEOC Charge, ECF No. 14-1 at 2.

---

[4] Presumably, the sexual harassment complaints referenced by the plaintiff are those that were the subject of the June 4 Settlement, although the plaintiff does not specify.

On January 24, 2022, plaintiff digitally signed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which listed the "Wood County Commissioners Office" as the sole respondent.  Id.  On March 31, 2022, she signed an Amended Charge of Discrimination, which added as a respondent the "Wood County Sheriff's Office."  Amended Charge, ECF No. 14-2.  The EEOC issued a Determination and Notice of Rights, which was signed by Deborah A. Kane, Area Director, on June 27, 2022.  EEOC Letter, ECF No. 1-1.  This letter informed plaintiff that the EEOC would not be proceeding with its investigation, the EEOC was dismissing her charge, and she had the right to file a lawsuit within 90 days.  Id.

On September 13, 2022, the plaintiff filed a complaint initiating the present civil action.  Her complaint lists four counts: Count I alleges gender discrimination and retaliation under Title VII; Count II alleges gender discrimination and retaliation under West Virginia state law; Count III alleges a deprivation of due process for plaintiff's placement on the Giglio list; and Count IV alleges defendants' intentional infliction of emotional distress.

## II.  <u>The motions to dismiss</u>

Defendant Steve Stephens brings a partial motion to dismiss that seeks dismissal of counts I and IV of the plaintiff's complaint as to him.  Stephens asserts that dismissal of Count I, encompassing the plaintiff's claims under Title VII, is appropriate for three reasons.  First, because the plaintiff failed to exhaust her administrative remedies inasmuch as the grounds asserted in the complaint were not part of the Charges of Discrimination filed with the EEOC.  Second, because the plaintiff failed to timely assert her claims within 180 days of the alleged discriminatory conduct.  Third, because the plaintiff's Charges of Discrimination filed with the EEOC failed to name Stephens and the claims are therefore assertedly unexhausted as to him.  As to Count IV, encompassing the plaintiff's claim of tortious intentional infliction of emotional distress, Stephens contends that it is barred by workers' compensation immunity.

The four Wood County defendants bring a motion to dismiss all claims against them.  First, they argue that all claims against the WCOS should be dismissed as the WCOS is not amenable to suit under West Virginia law.  Second, they argue that the plaintiff's Title VII claim in Count I must fail on account of her asserted failure to exhaust administrative

remedies.  Third, they argue that plaintiff has failed to state a claim for gender discrimination in Count I under Title VII, and in Count II under either the West Virginia Human Rights Act ("WVHRA") or Harless v. First Nat'l Bank in Fairmont, 246 S.E.2d 270 (W. Va. 1978).  Fourth, they argue that plaintiff's due process claim in Count III, relating to her Giglio listing, must fail as a matter of law because the plaintiff's complaint lacks allegations of any actionable conduct on the part of WCC, WCSD, and Sims, and Lefebure is entitled to absolute prosecutorial immunity for the conduct at issue.  Finally, they argue that plaintiff's intentional infliction of emotional distress claim in Count IV must fail because the defendants are shielded by workers' compensation immunity and West Virginia's governmental tort claims statute.

### III. Governing standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 551 U.S. 89, 93 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a

complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), abrogated on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'"  Erickson, 551 U.S. at 94 (quoting Twombly, 127 S. Ct. at 1965); see also S.C. Dept. of Health & Env't Control v. Comm. and Indus. Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).  The court must also "draw[] all reasonable factual inferences . . . in the plaintiff's favor[.]" Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

IV.   <u>Discussion</u>

a. <u>WCOS amenability to suit</u>

In their motion, the Wood County defendants argue that all claims against WCOS fail as a matter of law because the department is an entity incapable of being sued and therefore is an improper party.[5]  <u>See</u> Mem. Supp. Wood Cnty. Defs.' Mot. Dismiss at 5-6.

West Virginia law authorizes a county commission to sue or be sued.  <u>See</u> W. Va. Code § 7-1-1(a).  Federal courts in West Virginia have uniformly read the phrasing of this provision and the absence of any similar provision conferring the capacity for suit on county sheriff's departments to mean that claims against a sheriff's department are improper.  <u>See</u>, <u>e.g.</u>, <u>Rankin v. Berkeley Cnty. Sheriff's Dep't</u>, 222 F. Supp. 2d 802, 807 (N.D. W. Va. 2002); <u>Schoonover v. Clay Cnty. Sheriff's Dep't</u>, No. 2:19-cv-386, 2020 WL 2573243, at *7 (S.D. W. Va. May 21,

---

[5] **The parties also differ on the appropriate name of the department itself, with the Wood County defendants referring to it as the Wood County Sheriff's Department and the plaintiff referring to it as the Wood County Office of the Sheriff. Inasmuch as no motion has been made upon the court to correct or amend the party name as styled in the caption of this case, the court refers herein to the Wood County Office of the Sheriff ("WCOS").**

2020); <u>Taylor v. Clay Cnty. Sheriff's Dep't</u>, No. 2:19-cv-387, at *3 (S.D. W. Va. Feb. 24, 2020); <u>Tomashek v. Raleigh Cnty. Emergency Operating Ctr.</u>, No. 2:17-cv-1904, 2018 WL 522420, at *2-3 (S.D. W. Va. Jan. 23, 2018); <u>Simpkins v. Logan Cnty. Sheriff's Dep't</u>, 2:13-cv-16613, 2014 WL 4072066, at *1-2 (S.D. W. Va. Aug. 14, 2014); <u>Terlosky v. Matthews</u>, No. 5:11-cv-26, 2011 WL 1302238, at *2 (N.D. W. Va. Mar. 31, 2011); <u>Taylor v. Mercer</u>, No. 5:09-cv-127, 2010 WL 1490367, at *2 (N.D. W. Va. Apr. 13, 2010).  This reasoning follows that laid out by the Fourth Circuit in a case brought under 42 U.S.C. § 1983.  <u>See Revene v. Charles Cnty. Comm'rs</u>, 882 F.2d 870, 874 (4th Cir. 1989) (affirming dismissal of a claim against the "Office of Sheriff" in Charles County, Maryland because "this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency").

          Taken at its highest, the plaintiff's contention is that such a categorical incapacity to suit cannot possibly be true in light of the practice and decisional law of the West Virginia state courts regarding the Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 <u>et seq.</u> ("GTCA"). Plaintiff points out that the GTCA waives immunity from suit for certain tort claims against a "political subdivision," for which

it provides a capacious definition including "any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one or more counties, cities, or towns[.]"  She further points to several decisions of the Supreme Court of Appeals of West Virginia, some of which are suggestive of the notion that, if squarely presented with the issue, that court would find a county sheriff's office to fall within the statutory definition of a political subdivision.  However, the court notes with caution that such a determination has not yet come within the precedential holdings of any case cited by the plaintiff.

Plaintiff's observation is well taken, and it appears that a categorical bar to suit against county sheriff's offices is at least deserving of closer scrutiny in future cases within the scope of the GTCA.  However, the court need not address any inconsistency between the practice of the state and federal courts here because the GTCA is definitionally inapplicable to the plaintiff's claims.  Indeed, the GTCA "does not apply to, and shall not be construed to apply to . . . [c]ivil actions by an employee . . . against his or her political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision . . . [or c]ivil actions by an employee of a political

subdivision against the political subdivision relative to . . .
hours, conditions, or other terms of his or her employment." W.
Va. Code § 29-12A-18(b)-(c).

Plaintiff further contends that WCOS is a proper party
to this suit in light of (1) its prior agreement to settle other
past discrimination claims brought by plaintiff, and (2) the
EEOC's issuance of a right to sue notice upon an Amended Charge
of Discrimination (ECF No. 14-2) that lists the "Wood County
Sheriff's Office" as a respondent. Plaintiff cites to no legal
authority in support of either argument, and to the extent that
they can be construed as legal arguments, they are unpersuasive
inasmuch as neither a settlement agreement nor the Amended
Charge represents a determination of WCOS' amenability to suit.

Accordingly, the court concludes that WCOS is not a
proper party to this suit and it must be dismissed.

### b. Documents outside the complaint

The court must briefly address the matter of whether
it may consider six exhibits offered by the parties in
evaluating this motion to dismiss. These are: an EEOC Notice of
Right to Sue affixed to plaintiff's complaint (ECF No. 1-1); the
EEOC Charge of Discrimination (ECF No. 14-1) and EEOC Amended

Charge of Discrimination (ECF No. 14-2) affixed to defendant Stephens' motion (collectively, "EEOC Charges");[6] a sworn affidavit of the plaintiff concerning the EEOC complaint process (ECF Nos. 21-1, 23-1); an email received by plaintiff's counsel from the EEOC confirming filing of the Amended Charge of Discrimination, which was filed with plaintiff's responses to the motions to dismiss (ECF Nos. 21-2, 23-2); and a prior settlement agreement between the plaintiff and some defendants, dated June 4, 2020, and filed under seal with her responses to the motions to dismiss (ECF No. 31).

A court is permitted to consider pertinent documents attached to a defendant's motion to dismiss and plaintiff's response which are authentic and integral to the complaint. Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222–23 (4th Cir. 2009); see also United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014); Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir. 2006); Philips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

As to the Notice of Right to Sue, the EEOC Charges, and the settlement agreement, the court finds they are integral

---

[6] The two charges were also affixed to the Wood County defendants' motion as a single exhibit. See ECF No. 15-1. For clarity, the court will hereinafter refer to the docket numbers associated with the Stephens motion.

to the complaint to whatever extent they are relevant.  With no party contesting the authenticity of any of these documents, and indeed all parties relying upon them in their papers, the court further finds the documents are also authentic.  Therefore, the court will take them under consideration when ruling on these motions to dismiss.

As to the plaintiff's affidavit, the court notes that it alleges facts that are decidedly outside the scope of the complaint, and which do not represent adjudicative facts of which a court may properly take note.  Additionally, inasmuch as the email receipt confirming filing of the Amended Charge merely reiterates a fact evident on the face of the Amended Charge itself, the court does not find it integral.  Accordingly, the court disregards the affidavit and email receipt and does not consider them in passing upon the pending motions.

### c. Count I - Title VII claims

#### 1. Exhaustion of administrative remedies

Before filing suit for discrimination or retaliation under Title VII, a plaintiff must exhaust her administrative remedies.  See Love v. Pullman Co., 404 U.S. 522, 523 (1972); Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005).  To

properly exhaust administrative remedies before suit, a
plaintiff must file a charge of discrimination with the EEOC.
See 42 U.S.C. § 2000e-5.  Among the requirements of an
administrative charge are that it: (1) name the defendant as a
respondent, (2) be timely filed, and (3) state the general
nature of the alleged unlawful employment practice giving rise
to a claim.  See Chacko, 429 F.3d at 508-09.  Because "lawyers
do not typically complete the administrative charges," courts
must "construe them liberally" in favor of the plaintiff.  Id.
at 509 (citing Alvarado v. Bd. of Trs. of Montgomery Cmty.
Coll., 848 F.2d 457, 460 (4th Cir. 1988)); see also Sydnor v.
Fairfax Cnty., 681 F.3d 591, 594 (4th Cir. 2012) ("[T]he
exhaustion requirement should not become a tripwire for hapless
plaintiffs.").

        Here, the plaintiff signed a Charge of Discrimination
on January 24, 2022 that names as the sole respondent the "Wood
County Commissioners Office."  Charge, ECF No. 14-1 at 1.  The
cover sheet specifies that the alleged discrimination was based
on sex.  Id.  In its entirety, the charge alleges:

    I was hired by the above-named Respondent in June 2018
    as a Deputy.  Shortly after being hired the Sheriff,
    Steve Stephens, accompanied me to purchase uniforms.
    Sheriff Stephens touched my leg while driving and made
    inappropriate comments about my physical appearance.
    After my marriage ended in divorce, I began dating a
    fellow Deputy, Tim Allen, in May 2019.  After becoming

18

aware of the relationship, Sheriff Stephens, called me a whore in front of the public and departmental staff. He threatened to fire both Deputy Allen and me.  In March 2020, I filed a formal complaint and an outside law firm was hired to investigate my complaints.  On or about September 18, 2020, I requested light-duty as the result of pregnancy-related limitations.  On September 20, 2021, my former husband and his mother filed a Protection from Abuse (PFA) against me, prohibiting me from seeing the children I share with my ex-husband, Shane Hulett.  The PFA was initially denied, however, after Sheriff Stephens intervened, the PFA was then approved.  The Order was dismissed effective October 7, 2021.  A close friend of Sheriff Stephens, Sheila Hively, filed a report accusing me of pulling a handgun on my husband, Tim Allen.  The investigation conducted into my sexual harassment allegations by the firm, Baily and Wyatt [sic, Bailey & Wyant], substantiated my allegations of sexual harassment.  My light duty request was denied.  I believe I was discriminated against by the above-named Respondent because of my se [sic, sex], female and in retaliation for having filed a formal complaint of harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.  I was subjected to unwelcome touching and sexually offensive comments by Sheriff Steve Stephens.  After making a formal complaint, Sheriff Stephens retaliated against me by openly referring to me as a whore and mis-used his authority to interfere/influence personal matters before local courts.  Sheriff Stephens resigned effective December 1, 2021 after an additional investigation found him to have engaged in sexual harassment.

Charge of Discrimination, ECF No. 14-1 at 2.

On March 31, 2022, the plaintiff signed an Amended Charge of Discrimination.  Amended Charge, ECF No. 14-2 at 1. This document amends the cover sheet to add as a respondent the "Wood County Sheriff's Office" and specify that the alleged discrimination was based on retaliation as well as sex.  Id.

Save for the correction of a single typographical error, the factual allegations in the Amended Charge are identical to those in the initial Charge.  Id. at 2.

In her complaint initiating this civil action, the plaintiff alleges that the defendants "discriminated against [her] based on her gender and have retaliated against her for engaging in protected activity related to her gender discrimination complaints[.]"  Compl. at ¶ 59.  The factual basis for this claim involves seven alleged incidents occurring between September 2020 and August 2021, although the plaintiff alleges generally that "[t]he acts of gender discrimination and retaliation by Defendants are ongoing."  See id. at ¶¶ 18-56.

First, the plaintiff alleges an incident in September 2020 in which defendants Sims and Stephens told her she was fat while pregnant and told her to buy new clothes or have her husband, Sergeant Allen, buy them for her.  Compl. at ¶¶ 18-20. She further alleges that she reported this conduct to defendants Lefebure and WCC, neither of whom conducted any investigation into the matter.  Id. at ¶¶ 21-22.  The court will refer to this as the pregnant clothing incident.

Second, the plaintiff alleges an incident in March 2021 in which defendant Stephens initially denied her a shift exchange, which she had requested to accommodate her childcare

needs.  Id. at ¶¶ 24-27.  While the request was ultimately granted, the plaintiff alleges this was done "reluctantly" and only after she had pointed out assertedly disparate treatment based on her gender by reference to a male deputy with less seniority.  Id. at ¶ 28.  The court will refer to this as the shift exchange incident.

Third, the plaintiff alleges an incident in July 2021 in which defendant Stephens falsely accused plaintiff of having a sexual relationship with Sergeant Cross, leading to rumors and gossip within the plaintiff's workplace that reinforced Stephens' prior references to plaintiff as a "whore."  Id. at ¶¶ 29-32.  She further alleges that, through counsel, she notified counsel for WCC of unspecified "ongoing retaliation" on or about July 15, 2021.  Id. at ¶ 33.  The court will refer to this as the Sergeant Cross incident.

Fourth, the plaintiff alleges three contemporaneous incidents reflecting acrimony in the workplace that occurred "shortly []after" July 15, 2021.  See id. at ¶¶ 34-43.  The first such incident involved an email from defendant Stephens that allegedly "advis[ed] that [all deputies] would be disciplined if they were found to be spreading comments."  Id. at ¶ 36.  This allegedly came in response to a meeting called by defendant Sims with Sergeant Allen and a female WCOS employee

identified as Sergeant Matheny, in which Allen purportedly "demanded that something be done" to address what he viewed as the hostile work environment created by defendant Stephens.  Id. at ¶ 34.  The court will refer to this as the spreading comments incident.

Fifth, also "shortly []after" July 15, 2021, the plaintiff alleges an incident in which Sergeant Cross called meetings with three deputies – Swiger, Kidder, and Marlow – about what they had reported to the plaintiff about previous inquiries made of them by defendant Sims regarding the plaintiff.  Id. at ¶¶ 37-38.  The plaintiff characterizes the three deputies' discussions with defendant Sims as "interrogations" and alleges that the subsequent meetings with Sergeant Cross were directed at "get[ting] them to retract what they had told" the plaintiff about the earlier discussions with Sims.  Id. at ¶ 37.  She alleges that Cross attempted to, and did, intimidate the three deputies.  Id. at ¶¶ 37-38.  The court will refer to this as the three deputies incident.

Sixth, also "shortly []after" July 15, 2021, the plaintiff alleges an incident in which Sergeant Shriver stated an opinion disregarding the importance of childcare.  Id. at ¶ 39.  Although the plaintiff does not specifically allege it, Sergeant Shriver's interlocutor for these comments was

presumably the plaintiff, as she alleges that she reported the comments to Lieutenant Allen, along with her concerns about Shriver's unspecified "mistreatment" regarding the plaintiff's pregnancy and childcare needs. Id. at ¶¶ 40-41. She alleges that Shriver's comments were reported to defendant Stephens, but no responsive action was taken. Id. at ¶¶ 42-43. The court will refer to this as the childcare incident.

Seventh, the plaintiff alleges an incident occurring on or about August 2, 2021 in which defendants Stephens and WCOS retaliatorily provided information pertaining to a closed 2012 family court proceeding to defendant Lefebure so as to bring about her placement on the Giglio list. Id. at ¶¶ 44-51. Whether the plaintiff in fact provided false testimony in the 2012 family court proceeding so as to warrant placement on the list is not apparent from the pleadings and, in any event, disputed. See id. at ¶ 48; Wood Cnty. Defs.' Answer, ECF No. 10 at ¶ 48. The court will refer to this as the Giglio list incident.

### i. Parties

"Under Title VII, a civil action may be brought . . . only 'against the respondent named in the [administrative] charge.'" Alvarado, 848 F.2d at 458 (quoting 42 U.S.C. § 2000e-5(f)(1)). "The purpose of the naming requirement is twofold:

(1) to notify the charged party of an alleged violation, and (2) to secure the charged party's compliance with the law." EEOC v. 1618 Concepts, Inc., 432 F. Supp. 3d 595, 603 (M.D.N.C. 2020) (citing Alvarado, 848 F.2d at 458-59); Wonasue v. Univ. of Md. Alumni Ass'n, 295 F.R.D. 104, 110 (D. Md. 2013).  "The failure to name a defendant in the charge does not bar a subsequent suit if these purposes are 'substantially met.'" Clay v. Consol Pennsylvania Coal Co., 955 F. Supp. 2d 588, 601 (N.D. W. Va. 2013) (quoting Vanguard Justice Soc., Inc. v. Hughes, 471 F. Supp. 670, 687 (D. Md. 1979)).

From the EEOC Charges, it is apparent that they allege conduct on the part of some, but not all, of the same actors as those discussed in the judicial complaint.  That is, the charges allege improper conduct on the part of one defendant to this case, Sheriff Stephens, and name as respondents WCC and WCOS, but make no mention of defendants Sims or Lefebure.[7]  The court

---

[7] Plaintiff argues that she should not be faulted for the fact that the Amended Charge does not name Lefebure as a respondent and contains no mention of him in the text of the charge because she "had no control over whether the EEOC would [do so.]"  Pl.'s Resp. Wood Cnty. Mot. Dismiss at 13.  This argument is unpersuasive.  Not only did the plaintiff ratify the Amended Charge that was purportedly prepared by an EEOC investigator by affixing her digital signature, but she did so after having apparently become aware that her initial Charge was inadequate.  The court will not take unwarranted peradventures outside the four corners of the complaint to second guess the completeness of allegations before the EEOC that the plaintiff herself ratified with her signature on two separate occasions.

cannot therefore conclude that any claims brought against defendants Sims or Lefebure under Title VII have properly been exhausted, as neither one received the kind of notice and opportunity for pre-litigation conciliation envisioned by the statutory scheme.  Count I is accordingly dismissed as to defendants Sims and Lefebure.

Defendant Stephens insists that plaintiff's failure to name him as a respondent in the EEOC Charges means that the Title VII claims also remain unexhausted as to him.  Mem. Supp. Stephens Mot. Dismiss at 11.  The plaintiff contends that she has sufficiently complied with the Title VII naming requirement under the "substantial identity" exception.  Pl.'s Resp. Stephens Mot. Dismiss at 10.

Notwithstanding the general Title VII naming requirement, courts often recognize an exception for unnamed parties sharing a "substantial identity" with a respondent named in the administrative charge.  E.g. Nicol v. Imagematrix, Inc., 767 F. Supp. 744, 751 (E.D. Va. 1991).  The Fourth Circuit has only suggested approval for the substantial identity exception in dicta.  See Alvarado, 848 F.2d at 459; EEOC v. Am. Nat'l Bank, 652 F.2d 1176, 1186 n.5 (4th Cir. 1981).  However, eight other circuit courts of appeal have adopted some form of this exception.  See, e.g., Johnson v. Palma, 931 F.2d 203, 209-10

(2d Cir. 1991); Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d
Cir. 1977); EEOC v. Simbaki, Ltd., 767 F.3d 475, 484 (5th Cir.
2014); Alexander v. Loc. 496, Laborers' Int'l Union of N. Am.,
177 F.3d 394, 411-12 (6th Cir. 1999); Eggleston v. Chicago
Journeymen Plumbers' Loc. Union No. 130, U.A., 657 F.2d 890,
905-06 (7th Cir. 1981); Greenwood v. Ross, 778 F.2d 448, 451
(8th Cir. 1985); Romero v. Union Pac. R.R., 615 F.2d 1303, 1311
(10th Cir. 1980); Peppers v. Cobb Cnty., 835 F.3d 1289, 1296
(11th Cir. 2016); see also Sosa v. Hiraoka, 920 F.2d 1451, 1458-
59 (9th Cir. 1990) (naming requirement satisfied where unnamed
party was "involved in the acts giving rise to the EEOC claims"
or "should have anticipated that the claimant would name [them]
in a Title VII suit").  District courts in this circuit
regularly allow litigation to proceed against substantially
identical parties that were not named in the EEOC charge.  See
1618 Concepts, 432 F. Supp. 3d at 604 (collecting cases); see
also Carter v. Dominion Energy, Inc., 529 F. Supp. 3d 525, 545-
46 (W.D. Va. 2021); Cole v. Appalachian Power Co., No. 1:94-cv-
517, 1995 WL 463711, at *11-13 (S.D. W. Va. Mar. 30, 1995).

        A majority of circuit courts find the naming
requirement satisfied either where the unnamed party has
received actual notice of the EEOC proceedings, or where the
application of a four-factor test points toward substantial

identity between the named and unnamed parties.  See Simbaki,
767 F.3d at 484 (canvassing approaches of the circuits).  These
four factors direct a court to consider: (1) whether the
plaintiff could have, with reasonable effort, ascertained the
identity of the unnamed party; (2) whether, under the
circumstances, there are similar interests between the named and
unnamed parties such that it would be unnecessary to include
them in the EEOC proceedings in order to obtain voluntary
conciliation and compliance; (3) whether the unnamed party's
absence from the EEOC proceedings resulted in actual prejudice
to his interests; and (4) whether the unnamed party made
representations to the complainant that his relationship with
the complainant is to be through the named party.  Glus, 562
F.2d at 888.  Implied in the analysis under these factors is the
notion that substantial identity is tested at the time the
administrative charge is filed.  See id.; see also Carter, 529
F. Supp. 3d at 546.

　　　　　Neither the plaintiff nor Stephens represents that
Stephens received actual notice of the EEOC proceedings, so the
court proceeds to consider whether the plaintiff can satisfy the
naming requirement under the substantial identity exception by
reference to the Glus factors.  At the time the EEOC Charges
were filed on January 24, 2022, and March 31, 2022, Stephens no

longer had similar interests as to that of the named respondents in the EEOC Charges in light of his resignation of his position as Wood County Sheriff effective December 1, 2021.  This fact was known to plaintiff at the time she signed the EEOC Charges, as reflected by its incorporation in the narrative section of each document.  See ECF No. 14-1 at 2, ECF No. 14-2 at 2.  The first and second Glus factors therefore weigh heavily against the plaintiff.  Relatedly, given the conclusion of Stephens' tenure at WCOS, the fourth factor is irrelevant.  While the parties dispute whether Stephens was actually prejudiced by his absence from EEOC proceedings that assertedly resulted in no agency action, the lack of actual prejudice is insufficient, standing alone, to establish substantial identity.

Accordingly, the court cannot conclude that the plaintiff can avoid the Title VII naming requirement on a substantial identity theory.  Her Title VII claims against defendant Stephens thus remain unexhausted and must be dismissed.

### ii.  Timeliness

A plaintiff must file a charge of discrimination or retaliation under Title VII with the EEOC within "one hundred and eighty days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  "[D]iscrete

discriminatory acts are not actionable if time barred, even when they are related to [other] acts alleged in" charges filed with the EEOC within the statutorily-prescribed one hundred and eighty day period.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  Such discrete acts include matters like "termination, failure to promote, denial of transfer, or refusal to hire" and "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."  Id. at 114 (internal marks omitted).

However, "[t]he statute does not separate individual acts that are part of [a] hostile environment claim from the whole for the purposes of timely filing and liability" because "[s]uch claims are based on the cumulative effect of individual acts" amounting to a single unlawful employment practice.  Id. at 115, 118; Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 221-22 (4th Cir. 2016).  Thus, a hostile work environment claim will not be time-barred so long as any component act occurred within the statutory period.  Morgan, 536 U.S. at 119-21; Guessous, 828 F.3d at 222 ("[E]ven if most of the harassing conduct on which a plaintiff relies to establish her hostile work environment claim occurred outside the statutory period, the claim will be considered timely if at least one act

continuing the violation occurred within the statutory
period.").

Of the seven incidents alleged in the plaintiff's
judicial complaint, the court observes that both the allegation
about the March 2021 request for a shift exchange and the
allegation about the August 2021 placement on the <u>Giglio</u> list
represent the kind of "easy to identify" discrete act of
discrimination "constitut[ing] a separate actionable unlawful
employment practice" under Title VII.  <u>Morgan</u>, 536 U.S. at 114.
As to the shift exchange, it is not actionable inasmuch as
plaintiff's request was accommodated.  In addition, because the
180-day clock started to run for filing a charge with the EEOC
at the time of this incident, it is time barred as no such
charge was filed within the appropriate time.[8]  As for the <u>Giglio</u>
list incident, the plaintiff has alleged sufficient facts to
show that it occurred within 180 days of the filing of the
initial EEOC Charge on January 24, 2022, that is, that it
occurred after July 28, 2021, inasmuch as she alleges she was
called to defendant Lefebure's office for a meeting on August 2,

---

[8] While not actionable on a discrete violation theory,
plaintiff's allegation that the shift exchange was "reluctantly"
granted, might still be supportive of a hostile work environment
claim.  To the extent this incident might be supportive of a
timely hostile work environment claim, it would not be time-
barred.

2021, wherein she was told that she was being placed on the department's <u>Giglio</u> list.  Compl. at ¶¶ 44, 46.  As a discrete act, the <u>Giglio</u> list incident is not time-barred.

Although on the face of plaintiff's complaint the other incidents did not occur within the 180 days preceding the filing of the initial EEOC Charge, to the extent that plaintiff states a hostile work environment claim for discrimination or retaliation, these too are not time-barred inasmuch as the <u>Giglio</u> list incident is a constituent act of the continuing hostile work environment.

Accordingly, to whatever extent the plaintiff states a claim for a discrete violation on the <u>Giglio</u> list incident or a hostile work environment by reference to the seven alleged incidents as a single unlawful employment practice, such claims are not time-barred.

### iii. <u>Scope of charges</u>

"The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint."  <u>Hentosh v. Old Dominion Univ.</u>, 767 F.3d 413, 416 (4th Cir. 2014); <u>see also</u> <u>Smith v. First Union Nat'l Bank</u>, 202 F.3d 234, 247 (4th Cir. 2000) ("A plaintiff's EEOC charge defines the scope of her subsequent right to

31

institute a civil suit."); <u>King v. Seaboard Coast Line R.R.</u>, 538
F.2d 581, 583 (4th Cir. 1976) (civil suit "may encompass only
the discrimination stated in the [EEOC] charge itself or
developed in the course of a reasonable investigation of that
charge.").  Where "the claims raised under Title VII exceed the
scope of the EEOC charge and any charges that would naturally
have arisen from an investigation thereof, they are procedurally
barred." <u>Dennis v. Cnty. of Fairfax</u>, 55 F.3d 151, 156-57 (4th
Cir. 1995) (citing <u>EEOC v. Gen. Elec. Co.</u>, 532 F.2d 359, 366
(4th Cir. 1976)); <u>see also</u> <u>Parker v. Reema Consulting Servs.,
Inc.</u>, 915 F.3d 297, 306 (4th Cir. 2019); <u>Chacko</u>, 429 F.3d at
508-10 (4th Cir. 2005).

        While the allegations in an administrative charge
should not serve as a "tripwire," the allegations must "notify[]
the employer of the alleged discrimination."  <u>Chacko</u>, 429 F.3d
at 510.  Where there is a variance between the allegations in
the EEOC Charge and the formal complaint, a court must determine
"whether a plaintiff's administrative and judicial claims are
'reasonably related,' not precisely the same[.]" <u>Sydnor</u>, 681
F.3d at 595 (citing <u>Smith</u>, 202 F.3d at 247).  Ultimately,
"plaintiffs may bring Title VII claims for the first time before
a district court, so long as they are like or reasonably related
to charges in the original administrative complaint, and if they

reasonably could have developed from [an EEOC] investigation of the original complaint." Stewart v. Iancu, 912 F.3d 693, 706 (4th Cir. 2019).

A plaintiff's claims do not reasonably relate, and thus remain unexhausted, where they "deal[] with different time frames, actors, and conduct" such that they essentially "describe two different cases." Chacko, 429 F.3d at 511-12. Likewise, claims do not reasonably relate where discrimination is alleged in the EEOC Charge on one basis but another in a judicial complaint. Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 132-33 (4th Cir. 2002). However, allegations in a complaint may still reasonably relate to those in the EEOC Charge where they concern the same workplace, same actors, and same alleged form of discrimination, so long as the allegations in the judicial complaint could be expected to follow from a reasonable investigation of the administrative charge. See Sydnor, 681 F.3d at 594-97; see also Walton v. Harker, 33 F.4th 165, 174 (4th Cir. 2022).

The EEOC Charges reflect that the types of actionable discrimination under Title VII alleged are the same as those in the complaint filed in this civil action. That is, discrimination on the basis of sex and retaliation for engaging in protected activity. It is also apparent that many of the

specific factual allegations in the EEOC Charges bear little relation to those included in the judicial complaint. Nevertheless, this is an expected feature of the administrative process and it is entirely unsurprising that an initial charge provided by a layperson at the outset of an administrative process would include grievances that were later omitted in a subsequent judicial complaint filed by counsel.  Here, the court notes specifically that the plaintiff's judicial complaint contains no allegations reflecting her assertion in the administrative charges that a request for "light-duty as the result of pregnancy-related limitations" was denied.[9]  Amended

---

[9] In the memorandum in support of their motion to dismiss, the Wood County defendants noted the absence from the plaintiff's judicial complaint of any allegations corresponding to the denial of light duty allegations contained within the administrative charges.  Mem. Supp. Wood Cnty. Defs.' Mot. Dismiss at 7.  They characterized this as amounting to a "disavow[al]" of the allegation.  Id.  The plaintiff's response brief did not address the denial of light duty alleged in the EEOC Charges or the Wood County defendants' assertion that this allegation had been disavowed by the complaint.

The court notes that the plaintiff has not referenced the denial of light duty in her judicial complaint or in either of her response briefs to the pending motions to dismiss, notwithstanding the Wood County defendants' arguments referencing that omission.  Indeed, the only references to the denial of light duty appear in the defendants' memoranda and reply briefs in support of the motions to dismiss, as well as the text of the EEOC Charges, which were filed by the defendants as exhibits in support of their motions to dismiss.  Without addressing the Wood County defendants' contention that the plaintiff's complaint amounted to a disavowal of the light duty allegation, the court concludes that the plaintiff has waived it.

Charge at 2.  While noting the discrepancies between the administrative charges and judicial complaint, the court gives duly liberal construction to the EEOC Charges in considering whether any allegations therein reasonably relate to the incidents alleged in plaintiff's judicial complaint such that she has adequately exhausted them.

Turning first to whether the <u>Giglio</u> list incident, as a discrete violation, can be said to reasonably relate to the facts set out in the EEOC Charges.  In the EEOC Charges, plaintiff avers that Stephens "mis-used his authority to interfere/influence personal matters before local courts." Amended Charge at 2.  The EEOC Charges also reference a specific incident regarding a protection from abuse order, which intimates the involvement of Stephens in matters before a local court.  <u>Id.</u>  While that incident is not alleged in the complaint before this court, the EEOC Charges' reference in the plural to "matters before local courts" under any reading would suggest the existence of other possible incidents.  A reasonable investigation of this charge would quite naturally lead to inquiries about other instances in which Stephens sought to influence or interfere with the judicial process in matters concerning the plaintiff.  The complaint's allegation concerning the <u>Giglio</u> list incident is of the precise type that might be

expected to emerge from such an investigation, and it therefore reasonably relates back to the EEOC Charges for the purposes of administrative exhaustion.

The plaintiff's hostile work environment claims are more complicated insofar as they rely on a concatenation of incidents, only some of which are exhausted by the allegations in the EEOC Charges.  In addition to the court's conclusion that the Giglio list incident reasonably relates to allegations in the EEOC Charges, an investigation of the plaintiff's administrative allegation that "Stephens retaliated against me by openly referring to me as a whore," Amended Charge at 2, could reasonably be expected to uncover the more nuanced set of facts regarding the Sergeant Cross incident alleged in the judicial complaint that "rumors and gossip concerning Defendant Stephens' allegations of a sexual relationship between Deputy Hewitt and Sargeant [sic] Cross . . . remind[ed] everyone there that Defendant Stephens had often and repeatedly referred to [her] as a 'whore.'"  Compl. at ¶ 32.  Inasmuch as the Sergeant Cross incident allegations turn on workplace rumor and gossip, the spreading comments and three deputies incidents, each allegedly occurring shortly on the heels of the Sergeant Cross incident, could also reasonably be expected to surface in the course of an investigation of the administrative charges.

While the Sergeant Cross, spreading comments, three deputies, and <u>Giglio</u> list incidents fall within the scope of a reasonable investigation of the EEOC Charges, the other three incidents on which plaintiff bases her hostile work environment claim are decidedly not exhausted.  The EEOC Charges contain no allegations with even the slightest relationship to the allegations in the judicial complaint about the pregnant clothing, shift exchange, or childcare incidents.

Accordingly, the factual allegations concerning the pregnant clothing, childcare, and shift exchange incidents are not properly before the court.  <u>See</u> <u>Thorn v. Sebelius</u>, 766 F. Supp. 2d 585, 596-97 & n.10 (D. Md. 2011), <u>aff'd</u>, 465 F. App'x 274 (4th Cir. 2012) (disregarding as improperly before the court certain factual allegations underlying a hostile work environment claim where claim was predicated on a series of incidents, only some of which were included in the administrative charges).  However, having concluded that the Sergeant Cross, spreading comments, three deputies, and <u>Giglio</u> list incidents do reasonably relate to the allegations in the EEOC Charges, the plaintiff's hostile work environment claims for sex discrimination and retaliation, to whatever extent they exist, are exhausted insofar as they relate to those incidents.

2. <u>Failure to state claim</u>

Having determined that the plaintiff has exhausted her administrative remedies for Title VII discrimination and retaliation to a limited extent, and solely as to defendant WCC, the court next considers the Wood County defendants' argument that she has failed to state a claim under Title VII.

The court first notes that the Wood County defendants' arguments that the plaintiff fails to state a claim under Title VII are confined to whether she has stated a hostile work environment claim for sex discrimination. <u>See</u> Mem. Supp. Wood Cnty. Defs.' Mot. Dismiss at 9-11. The Wood County defendants do not argue that plaintiff has failed to state a Title VII claim for a discrete violation concerning the terms, conditions, or privileges of employment relating to the <u>Giglio</u> list incident. Nor do they argue that she has failed to state a viable Title VII retaliatory hostile work environment claim. The sufficiency of either such claim is therefore not presently before the court. Mindful of those limitations, the court proceeds to consider whether the plaintiff has plausibly stated a hostile work environment claim on the basis of sex discrimination.

Under Title VII, an employer may not discriminate against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1); see also Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 117 (4th Cir. 2021).  "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986); EEOC v. R & R Ventures, 244 F.3d 334, 338 (4th Cir. 2001) ("Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action.").  "A hostile environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)) (internal marks omitted).

To state a hostile work environment claim for sex discrimination, a plaintiff must allege that there was (1) unwelcome conduct, (2) based on her sex, (3) of sufficient severity or pervasiveness to alter the conditions of her

employment and create an abusive work environment, (4) that was imputable to the employer.  See Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (citing Spicer v. Va. Dep't of Corr., 66 F.3d 705, 710 (4th Cir. 1995) (en banc)). "While the first element is subjective, the rest of the test is made up of objective components based on a reasonable person standard."  Robinson v. Priority Auto. Huntersville, Inc., 70 F.4th 776, 781-82 (4th Cir. 2023) (quoting Pueschel v. Peters, 577 F.3d 558, 565 (4th Cir. 2009)) (internal marks omitted).

     The Wood County defendants' arguments are principally addressed to whether the plaintiff has adequately alleged conduct of sufficient severity or pervasiveness to satisfy the third element, although they make a brief argument as to the plaintiff's satisfaction of the fourth element as well.[10]  See Mem. Supp. Wood Cnty. Defs.' Mot. Dismiss at 9-12.

     "Element three of a hostile work environment claim requires a showing that 'the environment would reasonably be perceived, and is perceived, as hostile or abusive[.]'"  Boyer-Liberto, 786 F.3d at 277 (quoting Harris, 510 U.S. at 22).  This involves a "determination [that] is made 'by looking at all the

_____

[10] The Wood County defendants' arguments on this point make exclusive reference to case law of the West Virginia Supreme Court of Appeals interpreting a similar requirement under the WVHRA.

circumstances,' which 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris, 510 U.S. at 23).

"[V]iable hostile work environment claims often involve repeated conduct." Id. (citing Morgan, 536 U.S. at 115-17). "Importantly, however, an isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)) (internal marks omitted). "In measuring the severity of harassing conduct, the status of the harasser may be a significant factor" because, "[s]imply put, 'a supervisor's power and authority invests his or her harassing conduct with a particular threatening character.'" Id. at 278 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 763 (1998)).

Here, the plaintiff has alleged a course of behavior in which her supervisor, defendant Stephens, made invasive and particularized speculations about her intimate involvement with a co-worker, spurring rumor and gossip about the plaintiff in her workplace of a severity that led at least one co-worker to request defendant Sims intervene and address the matter.

Although the full extent of the rumor, gossip, and workplace interference stemming from the defendants' conduct, including the Sergeant Cross incident, is not ascertainable on the face of the pleadings, the plaintiff has alleged facts to plausibly establish that it was sufficiently severe and pervasive so as to satisfy this element of a hostile work environment sex discrimination claim under Title VII.

The fourth element of a hostile work environment claim requires a plaintiff to show that the offending conduct was "imputable on some basis to her employer." Ocheltree, 335 F.3d at 333. A plaintiff meets this element by showing that the employer is liable in negligence for its failure to take effective action to address harassment of which it had actual or constructive knowledge, or as a matter of vicarious liability where the harassment was carried out by a supervisor. Id. at 334.

The Wood County defendants contend that the plaintiff has failed to satisfy the fourth element of her hostile work environment claim as to defendant WCC. Mem. Supp. Wood Cnty. Defs.' Mot. Dismiss at 11. Without citation to any supportive authority, they contend that "WCC may be considered a proper party only to the extent that it can be the named party in an employment action by an employee of a county elected official"

42

such that it could not be "liable in any manner other than in 'name only.'"  Id. at 11-12.

The court declines to address such a conclusory argument at this stage.  Further factual development during discovery may bring much to bear on the plaintiff's case as to this element.  At the very least, the plaintiff has plausibly alleged enough to establish the fourth element of her claim on a negligence theory inasmuch as she alleges that counsel for WCC and a non-elected supervisory county employee, defendant Sims, had knowledge of the offending conduct.  See Compl. at ¶¶ 33, 35.  The court makes no determination at this stage as to whether the conduct of defendant Stephens as a county elected official may be imputable to defendant WCC under a vicarious liability theory.

Because plaintiff has alleged sufficient facts to satisfy all four of its required elements, the plaintiff has stated a hostile work environment claim for sex discrimination under Title VII and dismissal is not warranted.

d. Count II – WVHRA claims

In Count II, the plaintiff brings claims under the West Virginia Human Rights Act ("WVHRA") for discriminatory

43

disparate treatment on the basis of sex, as well as being subjected to a discriminatory and retaliatory hostile work environment.  See Compl. at ¶ 63.  She brings these claims against all defendants named in this civil action.  Id. Defendant Stephens has not moved to dismiss these claims.  The Wood County defendants purport to challenge the plaintiff's WVHRA claims in their entirety but make arguments only as to her discriminatory hostile work environment claim and disparate treatment claim, without addressing her retaliatory hostile work environment claim.  Mem. Supp. Wood Cnty. Defs.' Mot. Dismiss at 8-12.

The WVHRA "imposes a duty on employers to ensure that workplaces are free of sexual harassment from whatever source." Syl. Pt. 8, Hanlon v. Chambers, 464 S.E.2d 741 (W. Va. 1995). Under the WVHRA, hostile work environment claims for sex discrimination follow a standard similar to that governing Title VII claims of the same nature.  Penn v. Citizens Telecom Servs. Co., 999 F. Supp. 2d 888, 902 (S. D. W. Va. 2014).  To state a hostile work environment claim, a plaintiff must allege that there was (1) unwelcome conduct, (2) based on her sex, (3) that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4)

that such conduct was imputable on some factual basis to the employer.  See Syl. Pt. 5, Hanlon, 464 S.E.2d 741.

The court first notes that the WVHRA, as interpreted by the Supreme Court of Appeals of West Virginia, does not require the exhaustion of administrative procedural requirements prior to seeking judicial relief.  See Syl. Pt. 1, Price v. Boone Cnty. Ambulance Auth., 337 S.E.2d 913 (W. Va. 1985).  The limitations on the factual bases for the plaintiff's Title VII claims are thus not applicable to the court's analysis of the allegations underlying the WVHRA claims in Count II.

As with the Title VII claim, the Wood County defendants principally concentrate their arguments on the sufficiency of the plaintiff's pleadings as to the third element of a WVHRA hostile work environment claim.  That is, they argue that she has failed to allege facts that show a sufficient severity or pervasiveness of the unwelcome conduct.  See Mem. Supp. Wood Cnty. Defs.' Mot. Dismiss at 9-11.

The severe and pervasive element is one to be considered by reference to the totality of the circumstances. Conrad v. ARA Szabo, 480 S.E.2d 801, 812 (W. Va. 1996).  The Supreme Court of Appeals of West Virginia has relied on the discussion of the analogous element under Title VII articulated in Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993).  See,

e.g., Akers v. Cabell Huntington Hosp., Inc., 599 S.E.2d 769, 776-77 (W. Va. 2004). Under Harris, relevant factors for a court to consider on this element are: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." 510 U.S. at 23.

As with the court's analysis under Title VII, at this juncture, the plaintiff has alleged sufficient facts to satisfy the severe and pervasive element of a WVHRA hostile work environment claim. She has alleged several relevant incidents of arguably discriminatory conduct that, taken together, meet the plausibility standard for pleading. This is particularly the case where the full scope of the alleged rumor and gossip generated by conduct on one occasion, the Sergeant Cross incident, may yet be elucidated by further factual development during discovery.

However, in light of the court's conclusion infra that defendant Lefebure is entitled to immunity for the allegations giving rise to Count III, that is, the Giglio list incident, and the only other alleged conduct by Lefebure being his alleged failure to investigate the pregnant clothing incident, the plaintiff has failed to satisfy the severe and pervasive element

as to Lefebure.[11]   The court therefore concludes that the plaintiff has failed to state a WVHRA hostile work environment claim against defendant Lefebure.

The Wood County defendants also contend that the plaintiff has failed to allege sufficient facts as to the fourth element of a hostile work environment claim as to WCC, that is, she has not alleged any conduct that is imputable to the WCC as an employer.  Inasmuch as "an employer's liability in a case where the source of the harassment does not include management personnel depends on its knowledge of the offending conduct, the effectiveness of its remedial procedures, and the adequacy of its response[,]" Conrad, 480 S.E.2d at 812, this argument is premature without further factual development during discovery.

The plaintiff having alleged sufficient facts to establish the four elements of a hostile work environment claim for sex discrimination under the WVHRA, she has adequately stated a claim upon which relief may be granted and dismissal is therefore unwarranted.

The plaintiff's complaint also alleges a WVHRA disparate treatment claim under Count II based on the shift

---

[11] The court notes as well that the plaintiff offers no meaningful argument as to the basis for defendant Lefebure's supposed duty or authority to conduct such an investigation.

47

exchange incident.  <u>See</u> Compl. at ¶¶ 28, 63(a).  The Wood County defendants dedicate only a single sentence to contesting this claim.  <u>See</u> Mem. Supp. Wood Cnty. Defs.' Mot. Dismiss at 11. They contend that she was not entitled to the work schedule accommodation she requested in the first place but that, in any event, she was ultimately granted it.  <u>Id.</u>  These facts all appearing on the face of the complaint, the Wood County defendants' argument on this claim is more appropriately construed as a request for judgment on the pleadings.

To state a disparate treatment claim for employment discrimination under the WVHRA, a plaintiff must allege that (1) she was a member of a protected class; (2) the employer made an adverse decision concerning the plaintiff; and (3) but for the plaintiff's protected status, the adverse decision would not have been made.  <u>See</u> Syl. Pt. 3, <u>Conaway v. E. Associated Coal Corp.</u>, 358 S.E.2d 423 (1986).  Inasmuch as the plaintiff has alleged no adverse decision in regards to the shift exchange incident that would satisfy the second element under <u>Conaway</u>, the defendants are entitled to judgment on the pleadings as to the plaintiff's disparate treatment claim under the WVHRA.

e. <u>Count II – <em>Harless</em> claim</u>

Under Count II, the plaintiff also asserts that defendants' alleged discriminatory and retaliatory conduct

violates West Virginia law under an extension of <u>Harless v.</u> <u>First Nat'l Bank in Fairmont</u>, 246 S.E.2d 270 (W. Va. 1978). In <u>Harless</u>, the Supreme Court of Appeals of West Virginia found an exception to the general rule that an employer has an "absolute right" to take an adverse employment action against an at-will employee. <u>Id.</u> at 275. This exception arises when the employer's motivation for that adverse action "contravenes some substantial public policy principle." <u>Id.</u>

The Supreme Court of Appeals has identified the following as sources of public policy which may support a <u>Harless</u> claim: "established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. Pt. 2, <u>Birthisel v. Tri-Cities Health</u> <u>Servs. Corp.</u>, 424 S.E.2d 606 (W. Va. 1992). Since the <u>Harless</u> decision, "West Virginia courts have proceeded with great caution in applying public policy[.]" <u>Washington v. Union</u> <u>Carbide Corp.</u>, 870 F.2d 957, 962 (4th Cir. 1989) (internal quotation marks omitted); <u>see also</u> <u>Abel v. Niche Polymer, LLC</u>, 468 F. Supp. 3d 719, 722-25 (S.D. W. Va. 2020). "The burden is on the plaintiff to establish the existence of a substantial public policy." <u>Roth v. DeFeliceCare, Inc.</u>, 700 S.E.2d 183, 190 (W. Va. 2010) (citing Syl. Pt. 8, <u>Page v. Columbia Nat. Res.</u> <u>Inc.</u>, 480 S.E.2d 817 (W. Va. 1996)). Whether the plaintiff has

met this burden is a question of law for the court to decide. See Syl. Pt. 1, Cordle v. Gen. Hugh Mercer Corp., 325 S.E.2d 111 (W. Va. 1984).

In her complaint, plaintiff states only that "[a]ll of Defendants' conduct as stated above is in violation of . . . [Harless] or a good faith extension thereof." Compl. at ¶ 64. This threadbare statement fails to identify any public policy basis for her claim, much less a substantial one sufficient to support a Harless claim. Because plaintiff fails to identify a specific public policy underlying her claim, defendants are "left to speculate" about the basis for her claim to relief. Wiley v. Asplundh Tree Expert Co., 4 F. Supp. 3d 840, 845 (S.D. W. Va. 2014).[12] Dismissal of plaintiff's Harless claim under Count II is therefore appropriate.

f. Count III – Absolute prosecutorial immunity

As an initial matter, the court notes that the plaintiff's pleadings under the heading of Count III make allegations only regarding the conduct of Lefebure. See Compl. at ¶¶ 67-74.

---

[12] Moreover, adequate relief is available under the WVHRA.

In their memorandum in support of this motion to dismiss, the Wood County defendants contend that plaintiff's suit against Lefebure is barred by the doctrine of prosecutorial immunity.  Mem. Supp. Wood Cnty. Defs.' Mot. Dismiss at 12-16. They assert that this doctrine shields Lefebure from liability for his decision to place the plaintiff on the Giglio list inasmuch as a prosecutor is entitled to absolute immunity for functions closely tied to the criminal judicial process.  See id. (quoting Van de Kamp v. Goldstein, 555 U.S. 335, 341-43 (2009)).

In response, the plaintiff advances three arguments. First, the plaintiff contends, without citation to authority, that "the notion of absolute immunity died with the Declaration of Independence and the United States Constitution."  Pl.'s Resp. Wood Cnty. Defs.' Mot. Dismiss at 18.  Second, the plaintiff asserts that "placing a law enforcement officer on the Giglio list is not a prosecutorial function . . . [that] would enjoy immunity."  Id.  Finally, the plaintiff lays out the merits of her argument on Claim III and argues that, as a matter of policy, prosecutorial immunity should not be extended thereto.  See id. at 18-19.

As the court has previously observed, see ECF No. 57 at 8-9, the law jealously guards a prosecutor from damages

51

liability in the exercise of his prosecutorial functions.
"[P]rosecutors are absolutely immune from damages liability when
they act as advocates for the State." Savage v. Maryland, 896
F.3d 260, 268 (4th Cir. 2018) (citing Imbler v. Pachtman, 424
U.S. 409, 430-32 (1976)).  Prosecutorial immunity protects the
judicial process, not the person.  Id.  Thus, courts must "apply
a functional approach, looking to the nature of the function
performed, without regard to the identity of the actor who
performed it" and "focus on the conduct for which immunity is
claimed, not on the harm that the conduct may have caused or the
question whether it was lawful."  Id. (quoting Buckley v.
Fitzsimmons, 509 U.S. 259, 269, 271 (1993)) (internal marks
omitted).  Prosecutorial immunity applies even when the results
appear harsh or unfair.  See, e.g., Annappareddy v. Pascale, 996
F.3d 120, 138-39 (4th Cir. 2021) ("[W]hen absolute prosecutorial
immunity applies . . . it may in some cases lead to unfair
results, leaving the genuinely wronged [party] without civil
redress against a prosecutor whose malicious or dishonest action
deprives him of liberty." (citing Imbler, 424 U.S. at 430-31)
(internal marks omitted)).

        The Fourth Circuit has made clear that a prosecutor's
decision to place a law enforcement officer on a Giglio list is
a prosecutorial function entitled to absolute immunity from a

civil action for money damages under 42 U.S.C. § 1983.  Savage,
896 F.3d at 270-74; see also Giles v. Hindsman, No. 1:21-cv-256,
2022 WL 2784472, at *3-5 (W.D.N.C. Apr. 14, 2022), report and
recommendation adopted in part and rejected in part on other
grounds, 2022 WL 1957762 (W.D.N.C. June 6, 2022) (applying
Savage to police officer's civil damages action challenging
placement on Giglio list on due process grounds).

On this basis, there can be no question that Lefebure
is absolutely immune from suit for plaintiff's due process claim
on Count III, and it must therefore be dismissed as to him.

### g. Count IV – Workers' Compensation Act immunity

Under Count IV, plaintiff alleges intentional
infliction of emotional distress ("IIED") under West Virginia
common law.  Both Stephens and the Wood County defendants seek
to dismiss this claim on account of the broad immunity afforded
by the West Virginia Workers' Compensation Act ("WCA").  WCC
additionally asserts immunity as a political subdivision under
the Governmental Tort Claims and Insurance Reform Act, W. Va.
Code § 29-12A-1 et seq. ("GTCA").

Under the WCA, a qualifying employer "is not liable to
respond in damages at common law or by statute for the injury .

53

. . of any employee, however occurring[.]"  W. Va. Code § 23-2-

6.  This extends "to every officer, manager, agent,

representative or employee of such employer when he is acting in

furtherance of the employer's business and does not inflict an

injury with deliberate intention."  W. Va. Code § 23-2-6a; Syl.

Pt. 1, <u>Wisman v. William J. Rhodes & Shamblin Stone, Inc.</u>, 447

S.E.2d 5 (W. Va. 1994).  "The State of West Virginia and all

governmental agencies or departments created by it, including .

. . political subdivisions of the state . . . are employers

within the meaning of [the WCA.]"  W. Va. Code § 23-2-1(a).

        The WCA is "the exclusive remedy as against an

employer for workplace injuries . . . and provides general

immunity from suit for such injuries . . . to qualifying

employers."  <u>Young v. Apogee Coal Co., LLC</u>, 753 S.E.2d 52, 55

(W. Va. 2013).  This amounts to "sweeping immunity from common-

law tort liability" and "is not easily forfeited."  <u>Bias v. E.</u>

<u>Associated Coal Corp.</u>, 640 S.E.2d 540, 544 (W. Va. 2006).  There

are two exceptions to WCA immunity on common law tort claims:

(1) the WCA is not applicable in the first instance where an

employer is in default on its workers compensation obligations,

W. Va. Code § 23-2-6; and (2) the immunity from suit provided by

the WCA may be lost if the employer or person against whom

liability is asserted acted with "deliberate intention," W. Va. Code § 23-4-2(d)(2) (2022).[13]

The plaintiff does not argue that her complaint falls under either of these two exceptions, but instead asserts that her IIED claim seeks recovery for retaliation, which is not an "injury" within the meaning of the WCA and thus not subject to its exclusive remedy provision.  Pl.'s Resp. Wood Cnty. Defs.' Mot. Dismiss at 20; Pl.'s Resp. Stephens Mot. Dismiss at 11.  In response only to Stephens' invocation of WCA immunity, plaintiff also contends that it is inapplicable because the Supreme Court of Appeals of West Virginia has held that actions brought under the West Virginia Human Rights Act are not barred by WCA immunity.  Pl.'s Resp. Stephens Mot. Dismiss at 12 (citing Messer v. Huntington Anesthesia Grp., Inc., 620 S.E. 2d 144 (W. Va. 2005)).

Under the WCA, "no alleged injury or disease may be recognized as a compensable injury or disease which was solely

---

[13] W. Va. Code § 23-4-2 was amended by W. Va. H.B. 3270, which became law without the Governor's signature on March 29, 2023. These amendments are expressly made applicable to injuries occurring on or after July 1, 2023 and are accordingly not relevant to the allegations in this case.  Similarly, the same enactment's addition of W. Va. Code § 23-4-2a, limiting liability for noneconomic losses, is also not applicable to the instant proceedings, as it applies only to those causes of action accruing on or after July 1, 2023.

caused by nonphysical means and which did not result in any
physical injury or disease to the person claiming benefits."[14]
W. Va. Code § 23-4-1f(a).  The claims excluded by this provision
are occasionally referred to as "mental-mental" claims because
they often seek recompense for a mental or emotional injury
inflicted by mental or emotional means.  See id.  When amending
the WCA to include this provision in 1993, the West Virginia
Legislature included a statement that the legislature's intent
was "to clarify that so-called mental-mental claims are not
compensable under [the WCA]."  Id.

     The plaintiff's responses to the motions to dismiss
confusingly appear to suggest that the injury in her IIED claim
is the asserted retaliation she experienced in the workplace.
See Pl.'s Resp. Wood Cnty. Defs.' Mot. Dismiss at 20; Pl.'s
Resp. Stephens Mot. Dismiss at 12.  However, the allegations in
her complaint more clearly reflect the nature of the alleged
injury supporting her putative IIED claim.  Therein, she alleges
that defendants have caused her "severe emotional distress" and
"severe emotional and financial stress."  Compl. at ¶¶ 90, 93-
94.  She further alleges the specific cause of such injury as to
each of the Wood County defendants.  That is, on the part of

_____

[14] This provision contains a single exception, not relevant here,
for some instances of post-traumatic stress disorder.  See W.
Va. Code § 23-4-1f(c)-(f).

defendant Stephens, she alleges her injury was caused by his sexual harassment and retaliation.  Id. at ¶ 85.  On the part of defendants Sims and Lefebure, she alleges her injury was caused by their "aid[ing] and abet[ing]" Stephens' retaliatory conduct. Id. at ¶ 86.  And on the part of defendant WCC, she alleges her injury was caused by its failure to implement recommended training that would have assertedly prevented Stephens' conduct. Id. at ¶ 88.  Nowhere in plaintiff's complaint does she make any allegation of a physical injury or a nonphysical injury caused by physical means.  Accordingly, plaintiff's IIED claim, to whatever extent she has stated one,[15] is precisely the kind of mental-mental claim that the Legislature has deemed not compensable under the WCA regime.

Nevertheless, the West Virginia Supreme Court of Appeals has held that "[a]n employee who is precluded by W. Va. Code § 23-4-1f from receiving workers' compensation benefits for a mental injury without physical manifestation cannot, because of the immunity afforded employers by W. Va. Code § 23-2-6, maintain a common law negligence action against his employer for such injury."  Syl. Pt. 3, Bias, 640 S.E.2d 540 (W. Va. 2006) (citations omitted).  Thus, even if a "mental-mental" claim is

---

[15] No defendant asserts that the plaintiff has failed to state a claim for intentional infliction of emotional distress.

not compensable under the WCA, an employer may still invoke WCA immunity in court to avoid an employee's civil suit for damages related to the non-compensable "mental-mental" claim, unless another exception to WCA immunity applies.  See, e.g., State ex rel. Darling v. McGraw, 647 S.E.2d 758, 763 (W. Va. 2007) (applying Bias to uphold WCA immunity on employee's non-compensable mental-mental claim).

     While the decision in Bias was directed at a claim of negligent infliction of emotional distress, the uniform practice of federal courts in this state has been to find that the same result is compelled in the case of the intentional tort of outrage or IIED.  See Councell v. Homer Laughlin China Co., 823 F. Supp. 2d 370, 384 (N.D. W. Va. 2011); Miklewski v. Talbott Pers. Care, Inc., No. 2:20-cv-021, 2020 WL 4722384, at *2-3 (N.D. W. Va. Aug. 13, 2020); Fugate v. Frontier W. Va., Inc., No. 2:17-cv-559, 2017 WL 3065216, at *5-6 (S.D. W. Va. July 19, 2017).  That a pre-Bias decision of the West Virginia Supreme Court of Appeals found a defendant entitled to WCA immunity on, inter alia, a former employee's IIED claim, offers further support for applying WCA immunity to an IIED claim.  Miller v. City Hosp., Inc., 475 S.E.2d 495, 498, 499-502 (W. Va. 1996).

     Plaintiff's citation to Messer does nothing to countermand the controlling weight of Bias.  Indeed, Bias cited

58

to <u>Messer</u> as standing for the proposition that "[a]n employer is also not immune from liability for certain other intentional actions, such as discriminatory practices as provided in . . . The West Virginia Human Rights Act[.]" <u>Bias</u>, 640 S.E.2d at 544 & n.6.  This falls within the court's holding that an exception to the WCA immunity provision arises in "circumstances where the Legislature has by statute expressly provided an employee a private remedy outside the workers' compensation system." <u>Id.</u> at Syl. Pt. 2.  <u>Messer</u> therefore avoids the application of WCA immunity for plaintiff's claim under the WVHRA, but it does nothing to prevent defendants' invocation of WCA immunity on her common law IIED claim.

Because the burden of establishing the applicability of a statutory immunity provision rests with the party seeking to invoke it, <u>see</u> <u>Marlin v. Bill Rich Constr., Inc.</u>, 482 S.E.2d 620, 627 (W. Va. 1996), the court briefly considers whether plaintiff's IIED claim, as pleaded, survives WCA immunity under the deliberate intention exception.

Deliberate intention may only be shown in one of two ways: either by "prov[ing] that the employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury" to the employee, W. Va. Code § 23-4-

2(d)(2)(A), or by proving an employer's intentional exposure of an employee to a known and specific unsafe working condition in violation of a state or federal safety statute, rule, or regulation, or of a commonly accepted and well-known safety standard within the employer's industry.  W. Va. Code § 23-4-2(d)(2)(B).

The plaintiff has plainly not alleged facts that would support a deliberate intent claim under (d)(2)(B) insofar as she makes no claims as to any unsafe working condition.  The court thus proceeds to consider only whether plaintiff has pled sufficient facts to support a deliberate intent claim under (d)(2)(A).  "[A] broad pleading of [the] intentional tort [of IIED] is insufficient to plead deliberate intention to cause injury" under (d)(2)(A).  Councell, 823 F. Supp. 2d at 384 (citing Weirton Health Partners, LLC v. Yates, No. 5:09-cv-40, 2010 WL 785647, at *6 (N.D. W. Va. Mar. 4, 2010)).  Instead, "for an intentional infliction of emotional distress claim to fall outside of the immunity provisions of the West Virginia Workers' Compensation Act, the plaintiff must plead facts that suggest an actual, specific intent, and liability cannot result from '[i] Conduct which produces a result not specifically intended; [ii] conduct that constitutes negligence, no matter how gross or aggravated; or [iii] willful, wanton or reckless

misconduct.'" **Id.** (quoting statute now codified at W. Va. Code § 23-4-2(d)(2)(A) and citing to Weirton Health Partners) (internal marks omitted).

Here, the plaintiff has alleged that the "[d]efendants worked . . . in concert with nefarious, illegal, discriminatory and retaliatory plans . . . to end [her] employment" with WCOS, as well as "the specific intent and plan to end her career in law enforcement" by "sullying her reputation to the point that no other law enforcement agency would dare hire her[,]" and that this has "resulted in severe emotional distress[.]" Compl. at ¶¶ 89, 93. While this may well suffice to state a claim for IIED, it does not suffice to clear the high bar for pleading a deliberate intent claim under (d)(2)(A). On the face of the plaintiff's complaint, the specific intent of the alleged actions of the defendants was not to cause her emotional distress, but rather to inflict reputational harm and thereby interfere with her future employment prospects in law enforcement. Because the court does not find that the deliberate intent exception to the WCA immunity provision is applicable, dismissal of the plaintiff's IIED claim against all defendants is appropriate.

Finally, notwithstanding the immunity afforded by the WCA, defendant WCC is also entitled to dismissal of this claim

for the alternative reason that the immunity of a political subdivision has not been waived under the GTCA as it pertains to the intentional misconduct of its employees.  See <u>Zirkle v. Elkins Rd. Pub. Serv. Dist.</u>, 655 S.E.2d 155, 160-61 (W. Va. 2007); <u>Mallamo v. Town of Rivesville</u>, 477 S.E.2d 525, 534-35 (W. Va. 1996); <u>see</u> <u>also</u> W. Va. Code § 29-12A-4(b)(1).

### V.   Conclusion

For the reasons set forth above, the court accordingly ORDERS that:

1. Steve Stephens' partial motion to dismiss seeking dismissal of Count I and Count IV as to him be, and hereby is, granted;

2. The Wood County defendants' motion to dismiss be, and hereby is, granted to the extent set forth below, and is otherwise denied;

3. All claims under Counts I, II, III, and IV of the complaint be, and hereby are, dismissed as to defendant WCOS as an improper party;

4.  All claims under Count I be, and hereby are, dismissed as
    to defendants Lefebure, Sims, and Stephens for failure to
    exhaust administrative remedies;

5.  Judgment on the pleadings with respect to plaintiff's
    WVHRA disparate treatment sex discrimination claim
    regarding the shift exchange incident under Count II be,
    and hereby is, granted in favor of the Wood County
    defendants;

6.  The plaintiff's WVHRA hostile work environment claims
    under Count II be, and hereby are, dismissed as to
    defendant Lefebure for failure to state a claim;

7.  The plaintiff's <u>Harless</u> claim under Count II be, and
    hereby is, dismissed for failure to state a claim;

8.  All claims under Count III be, and hereby are, dismissed
    as barred by prosecutorial immunity;

9.  All claims under Count IV be, and hereby are, dismissed on
    account of the immunity conferred by W. Va. Code § 23-2-6
    and, as to defendant WCC, dismissed also on account of the
    immunity conferred by W. Va. Code § 29-12A-4(b)(1).

        Remaining in the case are Counts I and II.  Count I
remains solely against WCC on the plaintiff's following Title

63

VII claims: hostile work environment claims for sex discrimination and retaliation, and a discrete retaliation claim related to the Giglio list incident.  Count II remains against defendants Stephens, Sims, and WCC on the plaintiff's WVHRA hostile work environment claims for sex discrimination and retaliation.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: July 12, 2023

John T. Copenhaver, Jr.
Senior United States District Judge

64